

**FILED**
**Mar 26, 2019**
**11:11 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **CHARLES CATO,** | ) | **Docket No. 2017-06-1179** |
| Employee, | ) | |
| v. | ) | |
| **HUXTABLE ELECTRIC, INC.** | ) | **State File No. 45849-2017** |
| Employer, | ) | |
| and | ) | |
| **AMERICAN FIRE & CASUALTY** | ) | **Judge Joshua Davis Baker** |
| **CO.,** | ) | |
| Carrier. | ) | |

---

## EXPEDITED HEARING ORDER

---

The Court convened an expedited hearing on March 20, 2019, to determine whether Huxtable must provide Mr. Cato medical benefits. Huxtable argued it should not be required to provide medical benefits because Mr. Cato cannot prove that his injury arose primarily out of and the course and scope of employment at a final hearing. The Court disagrees and orders Huxtable to provide Mr. Cato medical benefits.

### Claim History

Mr. Cato alleged a left-shoulder injury on or about September 26, 2016, while carrying a piece of plywood in the course of his work for Huxtable. He eventually treated with Dr. James McGehee, who diagnosed a SLAP tear and labral cyst and performed corrective surgery. Mr. Cato paid for all the treatment with his private medical insurance.

A dispute over causation of Mr. Cato's injury arose from different descriptions of how it occurred. Dr. McGehee testified Mr. Cato told him "his left shoulder popped" while moving some boxes and that he had a history of instability and intermittent pain from a high school injury and a 2011 lumber-carrying incident. On an intake form, Mr. Cato made no mention of a 2016 injury, indicating his left-shoulder problems began in

1991 and 2011, and that his present shoulder problem was not work-related and occurred at "home."

Mr. Cato admitted he lied to medical providers about the cause of his accident per instruction from his supervisor, project manager Robert Frost. According to Mr. Cato, Mr. Frost told him to seek medical treatment under his private insurance rather than workers' compensation.[1]

Mr. Frost denied he refused to provide medical treatment for Mr. Cato. He testified he offered to "take him to the doctor," meaning he could receive treatment through workers' compensation, but that if he wouldn't accept treatment under workers' compensation, then he needed to go to his own doctor. He also testified that Mr. Cato reported the plywood incident several days after it occurred.

Mr. Frost's son, Justin, who also worked for Huxtable, affirmed that an incident involving plywood as described by Mr. Cato occurred on the jobsite.[2] However, he also testified that Mr. Cato complained of soreness in his left arm from a prior sports injury before the workplace accident occurred and experienced some pain while "pulling wire."

Concerning the causal relationship between the plywood incident and Mr. Cato's SLAP shoulder injury, Huxtable maintained that Mr. Cato injured his shoulder before the workplace accident and cited Dr. McGehee's deposition testimony to support its position. To that end, Dr. McGehee testified that Mr. Cato never informed him of a work-related accident as a possible cause of his injury. Based on the lack of information concerning a work-related accident, Dr. McGehee testified he could not say that Mr. Cato's SLAP tear and associated labral cyst arose primarily from his work:

> Q: And as we sit here today, based upon the history in your chart, your record that we've gone over this morning, that you cannot tell the Court, considering all possible causes of the labral tear and his cyst, that they arose primarily out of his job?
>
> A: Based on my medical records, no.

On cross-examination, Mr. Cato's counsel informed Dr. McGehee that Mr. Cato testified under oath that "he was carrying a piece of plywood across the worksite when

---

[1] Defense counsel asked Mr. Cato if he declined medical treatment because of the required drug test. Mr. Cato admitted he smoked marijuana but denied that fear of a drug test prompted him to decline medical treatment. He maintained that Mr. Frost instructed him to seek treatment under his private health insurance rather than workers' compensation.

[2] Another coworker, Jasen Hightower, provided an affidavit stating he witnessed the event with the plywood and heard Mr. Cato say he hurt his shoulder immediately after.

the wind caught the plywood and caused him to twist . . . or pull his shoulder." Counsel then asked whether this occurrence would be "consistent" with the injury he suffered. Dr. McGehee replied, "I would say that a labral tear certainly could be caused by a sudden twist of the shoulder, yes." He stated further:

> I'm trying to answer delicately. I would say that if that is the sequence of events that occurred—which I have no first-hand knowledge of—but if that's the sequence of events that occurred, then, yes, I think that to a greater than 50 percent threshold, that mechanism could have easily caused his symptoms.

Later in the deposition, the following exchange occurred:

> Q: I'm going to ask one more thing. Well, Doctor, as you know, we sent a letter to your office that specifically stated – just like we've talked about on this cross-examination, that Mr. Cato was advised not to turn this into workers' compensation. But Mr. Cato testified under oath, he's had witnesses who saw the accident. And based upon that information, if the Judge found that information credible, you would agree that the mechanism [of] injury that he has reported under oath is consistent and would be consistent with the injury that you treated for.
>
> A: Yes.
>
> Q: And based on that information, you would agree based on the history he's testified to under oath that the injury is primarily a result of his work accident while working for Huxtable.
>
> A: Yes. I think that if that is what happened, then that would be the causal event for treatment.

Huxtable denied the claim, asserting that Mr. Cato's first account to medical providers was the accurate version of his injury's origination. It admitted in its brief, however, that all medical care provided for his shoulder was reasonable and necessary should the court determine Mr. Cato's injury arose primarily out of and in the course and scope of employment. It also agreed that Dr. McGehee should serve as the authorized treating physician.

### Findings of Fact and Conclusions of Law

While Mr. Cato must prove all essential elements of his claim by a preponderance of the evidence at a final hearing, he need only present sufficient evidence at this expedited hearing that he is likely to prevail at a final hearing. *See* Tenn. Code Ann. § 50-

6-239(d)(1) (2018); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015). Mr. Cato carried this burden.

The parties' dispute concerns the causal relationship between Mr. Cato's work and his injury. The dispute has two distinct parts: the factual circumstances of the claim and medical causation.

The factual portion of the dispute turns on whether the mechanism of injury fits within the legal definition of an injury. Workers' Compensation Law defines an "injury" as an "injury by accident . . . arising primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14). Although the Court questioned Mr. Cato's credibility, as he admittedly lied to medical providers, all witnesses testified that an incident occurred. Mr. Cato said the incident occurred when the wind caught a piece of plywood at the jobsite; Justin Frost testified he witnessed the accident; and Jasen Hightower provided an affidavit stating he witnessed it as well. Finally, Mr. Frost admitted Mr. Cato reported the incident to him. Accordingly, the Court finds that an incident occurred on the jobsite involving a piece of plywood.

What happened after Mr. Cato told Mr. Frost about the incident is unclear. Mr. Cato said Mr. Frost told him to seek medical care on his own. Mr. Frost, on the other hand, said he initially offered to take Mr. Cato to the doctor but admitted telling Mr. Cato to see a doctor on his own if he would not let Mr. Frost take him. In any event, the reason Mr. Cato went to a doctor on his own is not important as Huxtable conceded to the reasonable medical necessity of his care if the Court found he would likely prevail at a hearing on the merits.

This brings the Court to the final piece of the puzzle: medical causation. Huxtable argued that Dr. McGehee's causation opinion was insufficient because it failed to consider "all causes" of Mr. Cato's injury. *See id*. at § 50-6-102(14)(C). The Court disagrees.

While Dr. McGehee testified that Mr. Cato's injury did not arise primarily out of his work because medical records contained a different account of his injury, he changed his opinion when presented with evidence of a workplace incident. In this Court's view, the parties presented Dr. McGehee with two possible scenarios: Mr. Cato's injury was preexisting, or the injury occurred when wind caught plywood he was carrying at the jobsite. Upon considering both scenarios, the Court finds Dr. McGehee determined the injury arose primarily out of the employment in terms of medical causation when he agreed "if that is what happened, then that would be the causal event for treatment." Because the evidence showed that the wind catching the plywood is what happened, it must follow that this is the causal event for treatment. The Court holds Mr. Cato would likely prevail at a hearing on the merits in proving his left-shoulder injury arose primarily out of and in the course of his employment for Huxtable.

4

**IT IS THEREFORE ORDERED:**

1.  In accordance with its agreement, Huxtable shall provide Mr. Cato reasonable and necessary medical treatment for his left-shoulder injury with Dr. McGehee serving as the authorized treating physician.

2.  Huxtable shall reimburse Mr. Cato and/or his private medical insurer for all reasonable and necessary medical care previously provided for this injury.

3.  The parties shall participate in a telephonic status conference with the Court on Monday, **May 13, 2019, at 11:00 a.m. (CDT).**

**ENTERED MARCH 26, 2019.**


_____
**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

# APPENDIX

**Exhibits:**

1. Medical records
2. Mr. Cato's affidavit
3. Affidavit of Jasen Hightower
4. Deposition of Dr. James B. McGehee, including 5 attached exhibits

**Technical Record:**

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Notice of Opposition to Requested Relief
5. Employee's Prehearing Brief
6. Employee's Witness and Exhibit List
7. Employer's Prehearing Brief

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this Order was sent to the following recipients by the following methods of service on March 26, 2019.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Adam Selvidge, Julie Reasonover; Employee's Attorneys | | | X | adam@reasonoverlaw.com julie@reasonoverlaw.com |
| Owen Lipscomb, Employer's Attorney | | | X | Owen.lipscomb@libertymutual.com |

_____
**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
Wc.courtclerk@tn.gov



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# EXPEDITED HEARING NOTICE OF APPEAL
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

**Employee** _____

v.

**Employer** _____

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## Additional Information

**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

## List of Parties

**Appellant (Requesting Party):**_____ At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name:_____   SF#:_____   DOI:_____

## Appellee(s)

**Appellee (Opposing Party):**_____At Hearing: ☐Employer ☐Employee

Appellee's Address:_____

Appellee's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I,_____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20 ___

[Signature of appellant or attorney for appellant]     _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived.  The following facts support my poverty.

1. Full Name:_____

2. Address: _____

3. Telephone Number: _____

4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental   $ _____ per month

Groceries      $ _____ per month    Telephone     $ _____ per month

Electricity      $ _____ per month    School Supplies $ _____ per month

Water        $ _____ per month    Clothing       $ _____ per month

Gas         $ _____ per month    Child Care     $ _____ per month

Transportation   $ _____ per month    Child Support   $ _____ per month

Car         $_____ per month

Other       $ _____ per month (describe: _____ )

10. Assets:

Automobile       $ _____     (FMV) _____

Checking/Savings Acct. $ _____

House          $ _____     (FMV) _____

Other          $ _____     Describe:_____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____